# Norman Powell v. Board of School Directors, Leland & Gray Union High School

[349 A.2d 879]

No. 250-74

Present: Barney, C.J., Smith, Daley and Larrow, JJ. and
Shangraw, C.J. (Ret.), Assigned

Opinion Filed December 2, 1975

*Glover and Fink*, Ludlow, for Plaintiff.

610

*Weber, Fisher, Perra & Gibson,* Brattleboro, for Defendant.

**Larrow, J.** Plaintiff, a business education teacher, entered into an employment contract with the defendant school board, under which he was to teach 180 days of the school year beginning September 1, 1972, at a stipulated salary. Admittedly, he had no tenure. On January 30, 1973, he was notified in writing that his contract would not be renewed for the next school year, and the reasons therefor were stated. Defendants at first agreed to give him a hearing on his non-renewal, but later, on advice of counsel, declined. Plaintiff brought suit for his damages, alleging discharge in breach of contract, as well as violation of his Fourteenth Amendment rights to due process. The trial court found against him on both claims, making appropriate findings and conclusions, and he appeals.

His claim for breach of contract is grounded upon the contention that his contract of employment incorporated by reference a provision contained in a "Joint Code of Employment and Dismissal Practices" set forth in a Vermont Education Association Handbook. The Handbook was in evidence, and at page 28 thereof, paragraph 3 appears as follows:

> 3. In the case of certified teachers who are not elected for the following contract year, notification of non-election and reasons therefor shall be made prior to the time contracts are issued; and in such cases a statement shall be issued, in writing, as to the reason(s) for the termination of employment through non-election and an opportunity for a hearing on those reasons shall be provided before the school directors within thirty days. The hearing may be in executive session if requested by the teacher. In open hearings both parties may be represented by counsel and accompanied by individuals who can offer evidence on the charges.

There can be no question that the provision for hearing, if a part of the employment contract, was not complied with. But the issue is not so simply resolved.

The employment contract itself is a printed form, with appropriate blanks to be filled in by the parties. Its source does not appear in evidence. Paragraph 5 of the contract reads as follows:

5. The teacher shall be notified at least thirty calendar days prior to the issuance of contracts if he is not to be rehired for the next school year. This notice shall be in writing along with a statement of reasons. When possible, a teacher should be notified and given a probationary period of at least three months prior to the date of contract issuance.

Again, no question is raised as to compliance with this provision. The notice was timely given and the reasons stated.

The claimed incorporation of the Handbook provision rests upon a phrase appearing in a black-bordered box printed on the contract form, below the signatures, and headed "Instructions." The first instruction deals with what is to be included in the space calling for training and experience. The second deals with the form of teacher's name to be used, particularly for married teachers. The third reads, in full:

JOINT CODE

"Our Joint Code of Fair Employment and Dismissal Practices" can be found in the V.E.A. Handbook on pages 7–38 and in the School Directors Guide.

The trial court concluded, we think rightly, that the quoted provision from the Handbook was not a part of the contract, not referred to in it, and not incorporated in it by reference. It relied to large degree upon the fact that the problem here involved is specifically spelled out in the basic contract, and concluded it was unable to find that the so-called "Instructions" were in the mind of the parties when the contract was made.

Acknowledging the validity of a contract reference to another document, this Court has recognized that the existence of such reference is a question of fact.

It is of course well established that a contract may be reached with reference to another writing, and the other document, or so much of it as is referred to, will be interpreted as a part of the main instrument. But the extrinsic writing must be connected by specific reference or by such mutual knowledge and understanding on the part of both parties that reference by implication is clear. If the

secondary instrument was not mentioned in the undertaking and was foreign to the minds of the parties at the time of their undertaking, it is clearly irrelevant as an aid to interpretation.

*Newton* v. *Smith Motors, Inc.,* 122 Vt. 409, 412, 175 A.2d 514 (1961) ; accord, 17 Am.Jur.2d *Contracts* § 263.

Viewed in this light, we cannot hold the conclusion of the trial court to be erroneous as a matter of law. Paragraph 5 of the contract document covered the situation where the teacher was not rehired, and in terms different from the Handbook provisions. It required 30 days notice prior to the time of contract issuance where the Handbook required none. It had a provision for probationary period, where the Handbook had none. And, it omitted the hearing provision contained in the Handbook. The trial court correctly concluded that the situation here in issue was specifically covered in the contract, and that incorporation of the Handbook by reference was not accomplished by the vague reference under "Instructions", especially where we are pointed to no direct evidence that the parties contemplated such incorporation, and where the claimed reference further lacked credibility because made to incorrect pages. If the code contained in the Handbook put in evidence is indeed the one mentioned under "Instructions", it appears at pages 28–29 rather than 7–38, and bears the slightly different title "Joint Code of Employment and Dismissal Practices." Moreover, and we think quite significantly, the contract form has an incorporation by reference which is clearly intended and clearly phrased. Paragraph 8 of the contract reads:

> 8. Extracts from the school laws on the reverse side of this contract have been read.

It is thus apparent that the drafter of the contract was familiar with the usual format for incorporation by reference, and could have employed it to incorporate the code, if this had been the intent. The trial court's conclusion that there was no incorporation by reference, as claimed by plaintiff, is amply supported.

Plaintiff's other claim of error rests upon the exclusion by the trial court of a question propounded of him by his own counsel. That question was:

> Now at the time, Mr. Powell, that you requested through myself a hearing to the Board, whether or not, sir, you had any expectation of continuing your employment?

Plaintiff directs our attention to *Perry* v. *Sindermann,* 408 U.S. 593 (1972), and its holding that, even absent tenure, there may exist in a particular institution an unwritten "common law" equivalent to tenure, which is not merely an unprotected "subjective expectancy" but a property interest entitled to Fourteenth Amendment due process protection in the form of a hearing. This claim was advanced generally, without factual allegations, in plaintiff's complaint.

We recognize the validity of the theory. But, like any other, it must be viewed in the context of what was before the court when the contested ruling was made. As framed, the question calls only for the "subjective expectancy" that *Perry* holds to be an insufficient basis for protection. If it was intended as merely preliminary, to be followed up by evidence of rules and understandings making such an expectation reasonable, it was still properly excluded when not accompanied by any offer of such proof. Such an offer is necessary to permit a determination whether exclusion of evidence is prejudicial. This was our former rule, and it is preserved by V.R.C.P. 43(c). *Macauley* v. *Hyde,* 114 Vt. 198, 42 A.2d 482 (1945); 2B Barron & Holtzoff, Federal Practice and Procedure § 969 (C. Wright ed. 1961). Without an offer of evidence to show that the claimed expectancy was more than subjective, that it had a factual justification in existing rules or understandings, the question as phrased was properly excluded. Since the record demonstrates no other basis for calling into play the holding of *Perry,* plaintiff's claim of error is not sustained.

*Judgment affirmed.*